UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONFLICT INTERNATIONAL,
INC., *and* CONFLICT
INTERNATIONAL, LTD.,

                              Plaintiffs,

          – *against* –

STEPHEN KOMOREK *and* API
INTERNATIONAL CONSULTING
GROUP, INC.,

                              Defendants.

**OPINION & ORDER**

23-cv-02165 (ER)

RAMOS, D.J.:

Conflict International, Inc. (Conflict), and Conflict International, Ltd. (Conflict UK), are private security firms that provide investigative services. They brought this action alleging contract and tort claims against Stephen Komorek—a former employee of Conflict—and his company, API International Consulting Group, Inc. Defendants have moved to dismiss the complaint on multiple grounds. For the reasons set forth below, the motion to dismiss is GRANTED IN PART and DENIED IN PART.

I.     **BACKGROUND**

Unless otherwise noted, the following facts are taken from the allegations in the complaint, which the Court accepts as true at this stage. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

A.  **The Parties**

Conflict UK is a private investigative and security services business based in the United Kingdom. Doc. 2 ¶ 11. The company employs approximately ten full-time employees and twelve part-time consultants. *Id.* Conflict UK is owned by Michael LaCorte and Jon Fawcett, who are UK residents and citizens. *Id.* ¶ 12.

Conflict is a subsidiary of Conflict UK.  *Id.* ¶ 8.  Conflict incorporated in New York in 2010 and commenced operations in 2017.  *Id.* ¶¶ 14–15.  It holds private investigative licenses in New York and North Carolina.  *Id.* ¶ 18.

Stephen Komorek is an Ohio citizen and a former employee of Conflict.  *Id.* ¶¶ 1, 9.  He founded API International, an Ohio corporation, shortly before resigning from Conflict in February 2022.  *Id.* ¶¶ 10, 94.

### B.  Komorek's Employment with Conflict

In 2018, Conflict sought to hire an investigator in the United States.  *Id.* ¶ 20. During that time, Conflict's owners met Komorek at a Las Vegas conference.  *Id.* Komorek represented that he had years of experience in investigations and intelligence, including experience and contacts from his time in the U.S. army.  *Id.* ¶ 23.  The complaint alleges that these representations "were later found to either be untrue or grossly misrepresented."  *Id.* ¶ 24.

Conflict hired Komorek in October 2018.  *Id.* ¶ 25.  Because Conflict and Conflict UK provide investigative services that depend on confidentiality, Komorek was required to sign a nondisclosure agreement.  *Id.* ¶ 26; *see* Doc. 2-1.[1]  The parties named in the agreement were Komorek and Conflict UK.  Doc. 2-1 at 2, 5.  But it included a provision stating that "[t]he undertakings set forth herein shall also be binding upon any affiliates, subsidiaries or successors of the Parties."  *Id.* ¶ 12.  The agreement provided that each party would treat as confidential any information that the other party designated as proprietary.  *Id.* ¶ 7.  The parties agreed not to disclose such confidential information to any unauthorized third parties without the explicit consent of the other party.  *Id.* ¶¶ 8.2– 8.4.  Conflict alleges that Komorek breached the agreement by disclosing confidential information to various third parties.  Doc. 2 ¶ 35.

---

[1] The Court may consider the agreement, Doc. 2-1, because it was attached to the complaint.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

In March 2020, Andrew McLaren joined Conflict to assist in finding new clients. *Id.* ¶ 62.  Komorek, serving as Conflict's U.S. director of operations, signed an agreement stating that McLaren would earn 10% net profit, per case, for each new client he brought to the company.  *Id.* ¶ 63.  McLaren eventually referred Trudy Jacobson to the firm for a variety of surveillance and investigative services.  *Id.* ¶¶ 64, 67.[2]

Jacobson retained Conflict in March 2021.  *Id.* ¶ 68.  Komorek was her sole point of contact at Conflict.  *Id.* ¶ 70.  According to the complaint, Komorek received payment from Jacobson for other investigative and business services while he was employed by Conflict and serving as an officer of the company.  *Id.* ¶ 71.  Conflict also alleges that Jacobson owes money to Conflict and that Komorek has encouraged her not to pay the amounts due.  *Id.* ¶¶ 72–76.

In early February 2022, Komorek proposed certain surveillance activities for Jacobson's case.  *Id.* ¶ 77.  He indicated that he intended to disclose confidential case information to third parties without authorization from Jacobson or Conflict.  *Id.* ¶¶ 77–78.  Conflict senior management outlined several concerns with the proposal and ultimately restructured it to ensure that the surveillance conducted was lawful.  *Id.* ¶¶ 79–82.

On February 24, McLaren learned for the first time that Jacobson had paid Conflict substantial fees.  *Id.* ¶ 85.  McLaren asked Komorek why he had not been compensated for the fees to which he was entitled under their agreement.  *Id.* ¶¶ 86–88.  On the following evening, February 25, Komorek resigned his position with Conflict.  *Id.* ¶ 92.  In his resignation email, Komorek stated that he would "continue to abide by our agreement of non-disclosure of confidential information belonging to Conflict."  *Id.* ¶ 93.

Prior to leaving, on February 23, Komorek had filed articles of incorporation in Ohio for API International.  *Id.* ¶ 94.  The complaint also alleges that Komorek made

---

[2] Jacobson is the plaintiff in another case before the undersigned against Conflict, McLaren, and a John Doe defendant.  *See generally Jacobson v. Conflict Int'l, Inc.*, No. 22 Civ. 10177 (ER) (S.D.N.Y.).

unauthorized copies of Conflict's confidential and proprietary information.  *Id.* ¶¶ 103–04.  After he resigned, Komorek began soliciting Conflict clients and persuaded some—including Jacobson—to end their relationship with Conflict and retain Komorek instead.  *Id.* ¶¶ 108–10.  And Komorek continues to use the confidential information he improperly retained to solicit Conflict clients.  *Id.* ¶¶ 111–12.

Following Komorek's departure, Conflict began conducting a review of the representations he had made.  *Id.* ¶ 118.  This investigation uncovered "a web of lies, misstatements, omissions, misrepresentations, and innuendo that Komorek made to Conflict and its employees."  *Id.* ¶ 119.  According to the complaint, Komorek misrepresented several details about his employment history, qualifications, and credentials.  *Id.* ¶¶ 120–36.  Komorek also failed to disclose that he had been sued for violations of the Stored Communications Act and the Federal Wiretap Act.  *Id.* ¶¶ 137–40.  Conflict alleges that it would not have hired Komorek had it known the truth about his employment history and experience.  *Id.* ¶ 144.

### C.  Post-Employment Incidents

Several of Conflict's claims arise from other events that occurred after Komorek resigned from the company in February 2022.

#### 1.  *Florida Division Complaint*

In April 2022, Komorek filed an anonymous complaint against Conflict with the Florida Division of Licensing, which is the state's licensing authority.  *Id.* ¶¶ 244, 246.  Komorek asserted that Conflict had attended a professional soccer conference in Miami even though the company was not licensed in Florida.  *Id.* ¶¶ 238, 244.  Conflict UK provides security services to European soccer clubs, so the conference presented a networking opportunity.  *Id.* ¶¶ 236–39.  After investigation, the Florida Division dismissed the complaint.  *Id.* ¶ 247.  Conflict alleges that Komorek filed the complaint "to harass and injure Conflict and to manufacture evidence for his later filed lawsuit."  *Id.* ¶ 249.

2. *The World Association of Detectives*

Two months later, in June 2022, several Conflict UK employees filed an ethics complaint against Komorek with the World Association of Detectives, Inc. (WAD). *Id.* ¶¶ 149–53. The WAD is a nonprofit group composed of private investigators and security professionals. *Id.* ¶ 145. The group polices its own members through internal disciplinary procedures. *Id.* ¶ 146. Komorek, LaCorte, and Fawcett are all members of the WAD. *Id.* ¶¶ 148–50.

The complaint against Komorek alleged six broad areas of potential ethical violations. *Id.* ¶ 155. The Conflict UK employees who filed the complaint have not disclosed any of the accompanying documents or the ultimate decision to any third party. *Id.* ¶ 157. Komorek, however, disclosed the nature of the complaint in this Court and in Law Enforcement Today, a blog. *Id.* ¶ 158. In its submissions to the WAD board, moreover, Conflict redacted names and information concerning clients and investigations. *Id.* ¶ 159. But Komorek's responses were not fully redacted, and he included the names of Conflict clients in his submissions. *Id.* ¶ 161.

After the WAD complaint was filed, Komorek sent several text messages and emails intended to damage Conflict's relationships with employees, clients, and other associates. *Id.* ¶¶ 211–12. In December 2022, for instance, Komorek sent "Client #1" a link to a Law Enforcement Today story—discussed in more detail below—that accused Conflict of "bilking a client through bogus billing." *Id.* ¶¶ 217–19. Komorek also sent anonymous emails to certain WAD board members, many of whom are professional associates of Conflict. *Id.* ¶¶ 225, 231. These messages accused LaCorte of corruption and suggested that there was corruption within the WAD. *Id.* ¶¶ 226–28. Conflict alleges that these emails were intended to harm Conflict's business relationships with the recipients. *Id.* ¶¶ 230–35.

   *3. Law Enforcement Today*

In December 2022, the Law Enforcement Today blog published a story about Conflict.  *Id.* ¶ 171.[3]  The blog is managed by Kyle Reyes, a friend of Komorek's.  *Id.* ¶ 164.  Komorek had persuaded Conflict's senior management to retain Reyes for marketing services.  *Id.* ¶ 165.  From 2019 to 2021, several positive stories about Conflict were featured on the blog.  *Id.* ¶¶ 168–69.  Once Komorek left Conflict, however, the blog began posting stories about Conflict that were false and misleading.  *Id.* ¶ 170.  One of those stories was authored by "Sgt. A. Merica," which the complaint alleges is a pseudonym used by Komorek.  Doc. 2-2; *see also* Doc. 2 ¶¶ 171–73, 221.  The story disclosed specific details from client investigations and included facts known only to Conflict and Komorek.  Doc. 2 ¶¶ 174, 176.

Conflict further alleges that Komorek manufactured a false statement in a New York state court defamation action against Law Enforcement Today and Reyes.  *Id.* ¶ 181.[4]  That action was filed by Trevor Shapiro, who was the subject of Jacobson's investigation.  *Id.* ¶¶ 181–84.  In January 2023, Law Enforcement Today filed a motion to dismiss the complaint and attached a purported communication, signed by Komorek, from Conflict to Law Enforcement Today.  *Id.* ¶¶ 190–91.  In the communication, Komorek falsely stated that a Conflict employee provided confidential information to Law Enforcement Today, with LaCorte's knowledge.  *Id.* ¶ 192; *see* Doc. 2-4.  Conflict searched its business records and did not find anything resembling this communication.  Doc. 2 ¶¶ 193–94.  Conflict denies that it provided any confidential information to Law Enforcement Today.  *Id.* ¶ 201.  The complaint alleges that Komorek manufactured this statement for the benefit of his friends at Law Enforcement Today and to damage Conflict's relationships with its clients.  *Id.* ¶¶ 208–09.

---

[3] The story is attached to the complaint as Doc. 2-2.

[4] The statement is attached to the complaint as Doc. 2-4.

In February 2023, after the publication of the Law Enforcement Today article, Conflict learned that a complaint against the company had been filed with "the New York licensing authority." *Id.* ¶¶ 250–52. Conflict alleges that Komorek—or Jacobson, acting on his behalf—filed the complaint in order to harass Conflict and manufacture evidence for Jacobson's case. *Id.* ¶¶ 254–55.

### D. Procedural History

Conflict and Conflict UK (Plaintiffs) filed this lawsuit on March 14, 2023, alleging various contract and tort claims against Komorek and API International. Doc. 2 ¶¶ 256–357. Plaintiffs sought damages and injunctive relief. *Id.* at 45–47. They also requested a temporary restraining order and preliminary injunction to enjoin Defendants from violating the nondisclosure agreement and disclosing any confidential information. Doc. 6. The Court denied that request at a hearing on March 15, 2023.

On April 24, Plaintiffs filed proof of service as to API International. Doc. 18. Plaintiffs filed proof of service as to Komorek on June 26. Doc. 26.

Defendants have moved to dismiss. Doc. 27. They argue that the complaint should be dismissed as to all defendants for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). *Id.* They also assert that the claims against Komorek should be dismissed for defective service. *Id.*

## II.   LEGAL STANDARD

### A. Rule 12(b)(1)

A court must dismiss the case for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The party asserting subject matter jurisdiction bears the burden of establishing that jurisdiction exists by a preponderance of the evidence. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). The court accepts all material factual allegations in the complaint as true,

*id.*, but it does not presume the truthfulness of the complaint's jurisdictional allegations, *Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 469–70 (S.D.N.Y. 2005).

When a party moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), a court must consider the Rule 12(b)(1) motion first. *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011). That is because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Chambers v. Wright*, No. 05 Civ. 9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (citation omitted).

**B. Rule 12(b)(6)**

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Koch*, 699 F.3d at 145. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The purpose of Rule 12(b)(6) "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). To state a plausible claim, the plaintiff must "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Citizens United v. Schneiderman*,

882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556).  If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

## III.   DISCUSSION

Plaintiffs bring claims against Komorek for breach of contract, abuse of process, tortious interference with contract, tortious interference with prospective economic advantage, unfair competition, breach of fiduciary duty, and unjust enrichment.  Doc. 2 ¶¶ 256–357.  The claims for tortious interference with contract and unfair competition are also alleged against API International.  *Id.* ¶¶ 298–305, 334–43.  Defendants challenge the sufficiency of each claim on various grounds.[5]

### A.  Failure to Serve Komorek

As an initial matter, Defendants argue that the claims against Komorek should be dismissed because he was not timely served.  Doc. 28 at 19.  "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Sikhs for Justice v. Nath*, 850 F. Supp. 2d 435, 439–40 (S.D.N.Y. 2012) (quoting *Dynegy Mistream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006)).  Rule 4(m) requires that service of the complaint and summons be completed within ninety days after the complaint is filed.  Fed. R. Civ. P. 4(m).  If a defendant is not served within ninety days, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  *Id.*  But the court must extend the time for service if the plaintiff shows "good cause" for the failure.  *Id.*

This case was filed on March 14, 2023, Doc. 2, so the deadline for service was June 12, 2023.  Plaintiffs timely served API International on April 11, 2023.  Doc. 18. But they did not serve Komorek until June 22, 2023.  Doc. 26.  Komorek thus was not timely served.

---

[5] The parties agree that New York law applies to each claim.

Plaintiffs contend that they have shown good cause to extend the service deadline. Doc. 31 at 24. But they fail to provide any details as to what "reasonable efforts" they made to serve Komorek. *See Gong v. Sarnoff*, No. 23 Civ. 00343 (LJL), 2023 WL 8096970, at *2 (S.D.N.Y. Nov. 21, 2023) ("Good cause is measured against the plaintiff's reasonable efforts to effect service and the prejudice to the defendant from the delay, and the court should look to whether the plaintiff was diligent in making reasonable efforts to effect service." (quoting *George v. Professional Disposables Int'l Inc.*, 221 F. Supp. 3d 428, 432–33 (S.D.N.Y. 2016))). Instead, Plaintiffs assert only that they served Komorek after "several attempts" and that they have otherwise been responsive to deadlines. Doc. 31 at 24. That is not sufficient to demonstrate good cause. *See, e.g.*, *Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 401 (S.D.N.Y. 2020) ("Good cause to excuse a failure to effect service exists only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." (internal quotation marks and citation omitted)); *Ping Chen ex rel. United States v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 306 (S.D.N.Y. 2013) ("An attorney's inadvertence, neglect, mistake or misplaced reliance does not constitute good cause." (citation omitted)).

Even in the absence of good cause, however, a district court has discretion to grant an extension under Rule 4(m). *Buon v. Spindler*, 65 F.4th 64, 75 (2d Cir. 2023). In determining whether a discretionary extension is warranted, "a court considers the following four factors: (1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether [the] defendant attempted to conceal the defect in service; and (4) whether [the] defendant would be prejudiced by extending plaintiff's time for service." *Agapov v. UBIF Franchising Co.*, No. 23 Civ. 02178 (PMH), 2024 WL 1018453, at *5 (S.D.N.Y. Mar. 8, 2024) (alterations in original) (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010)).

First, the parties do not address the applicable statutes of limitations. But even if the statutes of limitations would not bar refiling, the Court concludes that "it would be judicially uneconomical to force that procedure at this point where extension can be granted." *Feingold v. Hankin*, 269 F. Supp. 2d 268, 277 (S.D.N.Y. 2003).

Second, it is clear that Komorek had actual notice of the claims asserted. On March 15, 2023, the day after the complaint was filed, counsel appeared on behalf of both Defendants at a preliminary injunction hearing. On May 2, the parties submitted a stipulation extending the deadline for both Defendants to respond to the complaint. Doc. 20. On May 17, both Defendants requested a premotion conference in contemplation of a motion to dismiss. Doc. 21. And both Defendants moved to dismiss on July 11. Doc. 27. Komorek plainly was on notice of the claims asserted against him. Accordingly, this factor weighs in favor of an extension. *See, e.g.*, *Agapov*, 2024 WL 1018453, at *5 (finding "no question" that defendant received notice of the action and had sufficient notice to engage in motion practice, which weighed in favor of extension); *Patel v. Singh*, No. 21 Civ. 00759 (HG) (LGD), 2023 WL 2262792, at *5 (E.D.N.Y. Feb. 28, 2023) (concluding that extension was appropriate where defendants had notice of the lawsuit and had "participated extensively in the case").

Third, there is no indication that Komorek attempted to conceal the defect in service. In fact, Defendants noted in their premotion letter that Komorek had not been served. Doc. 21 at 4 n.2. But this factor "is not dispositive." *Blanco v. Success Academy Charter Schs., Inc.*, No. 23 Civ. 01652 (LJL), 2024 WL 965001, at *7 (S.D.N.Y. Mar. 6, 2024); *see also, e.g.*, *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 599 (E.D.N.Y. 2013) ("[T]his factor alone does not offset the numerous reasons that support granting plaintiff additional time to correct service of process.").

Fourth, the Court finds that Komorek would not be prejudiced by extending the time for service. Komorek was aware of the lawsuit and fully briefed the motion to dismiss the claims asserted against him. *See Buon*, 65 F.4th at 76 ("[O]n the issue of any

prejudice to [defendants], we emphasize that there is no question that they had sufficient notice here, as they . . . successfully moved to dismiss the [complaint].”); *Blanco*, 2024 WL 965001, at *7 (finding no prejudice “at this early stage of the litigation” given that motion to dismiss had been fully briefed on behalf of all defendants). And only ten days elapsed between the deadline for service and the date on which Plaintiffs served Komorek, which further indicates that an extension is appropriate. *See John v. City of Bridgeport*, 309 F.R.D. 149, 156 (D. Conn. 2015) (concluding that defendants suffered only “slight” prejudice, if any, from forty-nine-day delay); *see also Klinker v. Furdiga*, No. 12 Civ. 254, 2013 WL 1705106, at *4 n.5 (D. Vt. Apr. 19, 2013) (noting another court’s conclusion that delay was insufficient to show prejudice because “the case was only [a] couple months older than it would have been if [Plaintiff] hadn’t been given this extension” (alterations in original) (internal quotation marks and citation omitted)).

In sum, given the strength of the second and fourth factors, the Court concludes that a discretionary extension of the service deadline is warranted. *See John*, 309 F.R.D. at 156 (extending deadline where two factors weighed in favor of each party); *Bernstein v. Vill. of Piermont*, No. 11 Civ. 3677 (ER), 2012 WL 6625231, at *5 (S.D.N.Y. Dec. 20, 2012) (granting discretionary extension and noting “the general preference for deciding cases on the merits”). Defendants’ motion to dismiss the claims against Komorek for improper service is denied.

### B. Breach of Contract

Plaintiffs allege that Komorek breached his nondisclosure agreement by disclosing confidential information to third parties. Doc. 2 ¶¶ 256–76. Defendants seek to dismiss this claim on several grounds.

### 1. Standing

At the outset, Defendants argue that the breach of contract claim should be dismissed for lack of standing. Doc. 28 at 3. Because the nondisclosure agreement was

signed by Komorek and Conflict UK, Defendants reason, Conflict does not have standing to assert breach of contract claims for violation of the agreement. *Id.* at 4.[6]

Plaintiffs concede that a parent corporation and its subsidiary are generally treated as legally distinct entities. Doc. 31 at 8. But they argue that Conflict still has standing because it was bound by the terms of the nondisclosure agreement. *Id.* at 8–9.

In New York, "a third party may enforce a contract when 'recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'" *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 52 (2d Cir. 2012) (omission in original) (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 248 (2d Cir. 2002)). The benefit to the third party must be "sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [the third party] if the benefit [was] lost." *Id.* (alterations in original) (quoting *Madeira v. Affordable Housing Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006)). The analysis focuses on "whether the parties intended to benefit the third party." *Id.* In making that determination, a court "should consider the circumstances surrounding the transaction as well as the actual language of the contract." *Id.* (quoting *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005)).

---

[6] Defendants raise this argument under Rule 12(b)(1), and Plaintiffs do not question that approach. It is not clear that Rule 12(b)(1) is the proper vehicle for this challenge. *See, e.g.*, *Toretto v. Donnelley Fin. Solutions, Inc.*, 523 F. Supp. 3d 464, 476 (S.D.N.Y. 2021) ("[B]y challenging the sufficiency of the allegations to plead a cause of action for breach of contract in the context of a Rule 12(b)(1) challenge to Plaintiffs' standing, Defendants again tempt the Court to conflate a merits inquiry with standing."); *Buffalo Xerographix, Inc. v. Hartford Ins. Grp.*, 540 F. Supp. 3d 382, 390 (W.D.N.Y. 2021) ("Although a motion under Rule 12(b)(1) is the proper mechanism to challenge Article III standing, the Second Circuit has made clear that a challenge to contractual standing—a party's right to relief for breach of contract—implicates the merits of the claim rather than a court's subject-matter jurisdiction." (citing *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210–12 (2d Cir. 2020))). In any event, Defendants' argument fails regardless of whether Rule 12(b)(1) or Rule 12(b)(6) applies.

Here, both the language of the contract and the surrounding circumstances indicate that Conflict was a third-party beneficiary of the nondisclosure agreement. In particular, the agreement included a provision stating that "[t]he undertakings set forth herein shall also be binding upon any affiliates, subsidiaries or successors of the Parties." Doc. 2-1 ¶ 12. There is no dispute that Conflict is a subsidiary of Conflict UK. Doc. 2 ¶ 8. Defendants suggest that this language is insufficient because it merely binds Conflict rather than conferring a benefit. Doc. 28 at 4. But the provision demonstrates that this is not a case where "the two parties to the contract intended the contract to concern and to benefit only themselves." *Subaru Distribs.*, 425 F.3d at 125. And while the agreement does not refer to Conflict by name, "it is well-settled that the obligation to perform to the third party beneficiary need not be expressly stated in the contract." *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 573 (2d Cir. 1991).

Viewing the circumstances surrounding the transaction as a whole, moreover, the Court concludes that Conflict was an intended beneficiary. According to the complaint, Komorek signed the agreement "[a]s part of the employment process" after he was hired by Conflict as an officer. Doc. 2 ¶¶ 25–26. The complaint also alleges that Conflict's business relies on confidentiality and that the agreement "was reasonably necessary to protect Conflict's business in the investigative services industry." *Id.* ¶¶ 27–28.

Against this backdrop, it is difficult to accept Komorek's theory that the nondisclosure agreement required him to keep information he received from Conflict UK confidential, while leaving him free to disseminate any and all information he received from Conflict. The Court finds it improbable that Conflict UK intended such a result—or that Komorek thought he was so unconstrained when he signed the agreement. Instead, the circumstances surrounding the agreement suggest that Conflict was an intended beneficiary. *See Bayerische*, 692 F.3d at 56 (allegations about circumstances under which agreement was signed plausibly indicated that third party was intended beneficiary); *see also Bild v. Konig*, No. 09 Civ. 5576 (ARR) (VVP), 2012 WL 13109964, at *16

(E.D.N.Y. Dec. 20, 2012) (finding at summary judgment stage that reasonable juror could conclude that "the contracting parties manifested their intent in such a way that the third party was likely to reasonably rely on the contract" (citation omitted)).  And that conclusion is strengthened by Komorek's statement in his resignation email that "I will continue to abide by our agreement of non-disclosure of confidential information *belonging to Conflict*."  Doc. 2 ¶ 93 (emphasis added).

Based on the facts alleged, the Court finds that the parties to the nondisclosure agreement intended to make Conflict a beneficiary of Komorek's promise to maintain confidentiality in the course of his employment.  Conflict thus has standing to bring the breach of contract claim.

### 2.  Enforceability

Next, Defendants argue that the breach of contract claim should be dismissed because the nondisclosure agreement is unenforceable.  Doc. 28 at 4.  Defendants point to the broad definition of "confidential information," which includes categories such as "technical plans," "business strategies," "trade secrets," and "know-how."  *Id.* at 5.  They also assert that the confidentiality restrictions "last indefinitely."  *Id.*

Confidentiality agreements are enforceable "to the extent that they are reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee."  *Denson v. Donald J. Trump for President, Inc.*, 530 F. Supp. 3d 412, 432 (S.D.N.Y. 2021) (internal quotation marks and citation omitted).  New York courts recognize "the legitimate interest an employer has in safeguarding that which has made his business successful and to protect himself against deliberate surreptitious commercial piracy."  *Reed, Roberts Assoc. v. Strauman*, 353 N.E.2d 590, 593 (N.Y. 1976).  As a result, "restrictive covenants will be enforceable to the extent necessary to prevent the disclosure or use of trade secrets or confidential customer information."  *Id.*  But "[i]mpenetrable vagueness and uncertainty will not do[] because definiteness as to material matters is of the very essence

in contract law." *Denson*, 530 F. Supp. 3d at 432 (first alteration in original) (internal
quotation marks and citation omitted).

Defendants rely heavily on *Denson*, but that case is not analogous. Doc. 28 at 4–
6. There, a former employee of the Trump campaign challenged a nondisclosure
agreement that she had been required to sign. *Denson*, 530 F. Supp. 3d at 417. The court
first noted that the nondisclosure provision had no time limitation. *Id.* at 432. In
addition, the court found that the "vague, overbroad, and undefined terms" of the
agreement made it impossible for employees to know whether certain speech would be
covered. *Id.* at 433–34. Because of the breadth of the agreement, the court concluded,
"the mutual assent that is required for an enforceable contract under New York law is not
present." *Id.* at 434.

The agreement in this case, by contrast, provides clearer guidance on what kind of
information may not be disclosed. Specifically, the agreement defines "confidential
information" as "all and any information, received by one Party ('Recipient') from the
other ('Discloser') and designated by the Discloser as being proprietary in nature." Doc.
2-1 ¶ 7. The same provision reiterates that confidential information includes materials
"provided by one Party to the other and identified by the Discloser as confidential at the
time of disclosure." *Id.* This language ensures that the recipient has notice of what
information the other party has identified as confidential. The uncertainty that
characterized the agreement in *Denson* thus is not present here. *See* 530 F. Supp. 3d at
433–34; *cf. L.I. City Ventures v. Urb. Compass, Inc.*, No. 18 Civ. 5853 (PGG), 2019 WL
234030, at *14 (S.D.N.Y. Jan. 16, 2019) (finding that agreement was overbroad where it
prohibited disclosure of *any* information regardless of whether it was proprietary and
confidential).

Nor is the nondisclosure agreement unenforceable based on its duration. The
agreement provides that it shall be in effect "till such time as the substance of the
Confidential Information has entered the public domain . . . or till the permission to

16

release or issue press-releases in respect of such Confidential Information is specifically granted in writing by the Discloser." Doc. 2-1 ¶ 12. Defendants contend that the lack of a time limitation renders the agreement unenforceable. Doc. 28 at 5.

The argument is not persuasive. As other courts have explained, "the mere fact that . . . confidentiality agreements [are] not limited in duration does not necessarily make them ipso facto unenforceable." *Schiff v. ZM Equity Partners, LLC*, No. 19 Civ. 4735 (WHP), 2020 WL 5077712, at *14 (S.D.N.Y. Aug. 27, 2020) (alteration and omission in original) (quoting *Ashland Mgmt. Inc. v. Altair Invs. NA, LLC*, 869 N.Y.S.2d 465, 471 (App. Div. 2008), *aff'd as modified*, 925 N.E.2d 581 (N.Y. 2010)); *cf. Karpinski v. Ingrasci*, 268 N.E.2d 751, 753 (N.Y. 1971) (holding that restrictive covenant may not be invalidated merely because "it is unlimited as to time"). "Protecting trade secrets and truly confidential information . . . does not have to be time limited in every instance where the covenant does not otherwise prevent a former employee from pursuing his or her livelihood or interfere with competition." *Ashland*, 869 N.Y.S.2d at 471. Instead, the reasonableness of the duration "depends on the circumstances." *Id.* at 472.[7]

Here, the nondisclosure agreement was intended to safeguard confidential information concerning Conflict's clients. Doc. 2 ¶¶ 26–28. Courts have recognized that protecting confidential information is a legitimate business interest. *See, e.g., Adecco USA Inc. v. Staffworks, Inc.*, No. 20 Civ. 744 (MAD) (TWD), 2021 WL 66563, at *3 (N.D.N.Y. Jan. 7, 2021) (citing *Am. Inst. of Chem. Eng'rs v. Reber-Friel Co.*, 682 F.2d 382, 387 (2d Cir. 1982)). The duration of the agreement—maintaining confidentiality until the information entered the public domain or the discloser granted permission to

---

[7] Defendants cast some doubt on the extent to which the Appellate Division's decision in *Ashland* remains good law following its modification by the Court of Appeals. Doc. 34 at 4. The Court of Appeals dismissed in part other causes of action—in addition to those dismissed by the lower courts—because the confidentiality agreements at issue did not prohibit the defendants from soliciting the plaintiff's clients. *Ashland*, 925 N.E.2d at 581. But the high court's decision did not turn on whether the agreements included time limitations, as Defendants seem to concede, *see* Doc. 34 at 4 (asserting that the *Ashland* test, as stated in *Denson*, "first queries whether the agreement is reasonable in time and area" (internal quotation marks and citation omitted)).

release it—is a reasonable means of furthering that interest. And there is no reason to think that Komorek was unable to pursue his livelihood based on the restriction; he was merely required to keep certain information confidential. *See Ashland*, 869 N.Y.S.2d at 472 & n.2 (holding that confidentiality agreements were not unreasonable where they "merely attempt to prevent defendants from unfairly using plaintiff's trade secrets" and did not "perpetually restrict defendants from working for someone else or in a similar business").

Plaintiffs have plausibly alleged that the nondisclosure agreement is enforceable.

*3. Applicability*

Finally, Defendants challenge the breach of contract claim on the basis that the nondisclosure agreement is "factually inapplicable." Doc. 28 at 6. The agreement is limited to the "pre-employment setting," they argue, because it states that "both parties are interested in meeting to consider possible collaboration." *Id.*; *see* Doc. 2-1 ¶ 1. According to Defendants, the complaint does not allege that Komorek violated the nondisclosure agreement in the pre-employment context, so the breach of contract claim must be dismissed. Doc. 28 at 7–8.

As a preliminary matter, this argument is somewhat at odds with Defendants' position that the duration of the agreement is unreasonably broad. But even setting that aside, the Court finds that the terms of the nondisclosure agreement are clear. The agreement states that "both parties are interested in meeting to consider possible collaboration" and that "all information . . . that is supplied in the course or as a result of so meeting shall be treated as confidential by the receiving party." Doc. 2-1 ¶ 1. The agreement also provides that it "shall be in full force and effect until agreed otherwise by [Conflict UK]" and "shall continue to be binding" until the confidential information either enters the public domain or is approved for release by the discloser. *Id.* ¶ 12. Based on this language, the Court finds it implausible that the parties intended for the agreement to apply only in the pre-employment context. Instead, the terms of the agreement indicate

that the confidentiality restrictions took effect when the agreement was signed and remained in place until the confidential information was disclosed.

Even if the agreement were ambiguous, moreover, the Court could look to Komorek's resignation email to confirm his understanding that the agreement was not limited to the pre-employment context.  *See* Doc. 2 ¶ 93 (Komorek's resignation email stated that he would "continue to abide by our agreement of non-disclosure of confidential information belonging to Conflict").  *See generally, e.g.*, *Donohue v. Cuomo*, 184 N.E.3d 860, 866 (N.Y. 2022) (explaining that extrinsic or parol evidence is admissible if court finds ambiguity in contract).  While Defendants rely on *contra proferentem*—the principle that ambiguities in a contract are resolved against the drafter—that doctrine "may only be applied as a last resort, if the extrinsic evidence is inconclusive."  *Perella Weinberg Partners LLC v. Kramer*, 58 N.Y.S.3d 384, 389 (App. Div. 2017); *see also Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 674 (2d Cir. 1997) (explaining that New York courts apply the doctrine "only as a matter of last resort after all aids to construction have been employed without a satisfactory result" (citation omitted)).  Because Komorek's email makes clear that he understood his confidentiality obligations to be ongoing, the Court need not resort to the doctrine of *contra proferentem*.[8]

At this stage, the complaint plausibly alleges a breach of contract claim for violations of the nondisclosure agreement.  With respect to that claim, Defendants' motion to dismiss is denied.

### C.  Abuse of Process

Plaintiffs also bring an abuse of process claim against Komorek.  Doc. 2 ¶¶ 344–57.  The complaint invokes the following proceedings:  (1) Jacobson's lawsuit against

---

[8] Defendants suggest that Komorek could not have "expand[ed] the scope" of the agreement in his resignation email because he received no benefit in return.  Doc. 34 at 7–8.  That argument misses the point, which is that the email illustrates the parties' understanding of the agreement—not that the email *changed* the terms of the agreement.

Conflict in this District; (2) Komorek and API International's lawsuit against Conflict in this District; (3) Komorek's complaint against Conflict with the Florida Division of Licensing; (4) Komorek's complaint against Conflict with the North Carolina Protective Services Board; and (5) Komorek's complaint "with the State of New York" alleging unknown violations. *Id.* ¶¶ 345–49. Plaintiffs assert that Komorek used these complaints "for the purpose of tying up Plaintiffs' assets and time" and to "manufacture evidence" to harm Plaintiffs' business relationships. *Id.* ¶¶ 351–52.

To state a claim for abuse of process, "a plaintiff must allege that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of process." *Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 131 (S.D.N.Y. 2012) (alterations in original) (quoting *Savino v. City of New York*, 331 F.3d 63, 70 (2d Cir. 2003)).

Plaintiffs have failed to meet the pleading requirements for an abuse of process claim. In New York, "the mere 'institution of a civil action by summons and complaint is not legally considered process capable of being abused.'" *Manhattan Enterprise Grp. LLC v. Higgins*, 816 F. App'x 512, 514 (2d Cir. 2020) (quoting *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984)). Put differently, "the commencement of a civil action cannot, by itself, support a plaintiff's claim for abuse of process, even when the civil action was 'intended to cause the plaintiff[] expense and to burden [him] with the defense of a protracted legal proceeding.'" *Id.* (alterations in original) (quoting *Curiano*, 469 N.E.2d at 1326); *see also PSI Metals, Inc. v. Firemen's Ins. Co. of Newark*, 839 F.2d 42, 43 (2d Cir. 1988) (finding that "there could be no abuse of process claim where the only process employed by the defendant was the filing of an answer and counterclaim"). The allegations that Defendants filed these complaints to deplete Plaintiffs' resources and interfere with their business relationships, Doc. 2 ¶¶ 351–52, are thus insufficient to state a claim for abuse of process.

Plaintiffs' arguments to the contrary lack merit.  For one, they assert that Defendants have initiated "a wake of litigation, complaints, and filings . . . with the intent to harm Plaintiffs' business."  Doc. 31 at 14.  Again, however, these kinds of filings are not sufficient to state an abuse of process claim.  *See, e.g.*, *Manhattan Enterprise*, 816 F. App'x at 514–15 (holding that various court filings such as appeals and objections did not qualify as legal process because they "do not require Plaintiffs 'to perform or refrain from the doing of some prescribed act' and are no more encumbering of Plaintiffs' persons or property than a civil summons and complaint" (quoting *Julian J. Studley, Inc. v. Lefrak*, 362 N.E.2d 611, 613 (N.Y. 1977))); *see also Williams v. Williams*, 246 N.E.2d 333, 335 (N.Y. 1969) (rejecting abuse of process claim due to lack of "unlawful interference with one's person or property under color of process").

Plaintiffs also point to Komorek's statement in the New York state action for defamation against Law Enforcement Today.  Doc. 31 at 14.  The complaint alleges that Komorek manufactured a false statement—submitted in connection with a motion to dismiss that case—for the benefit of his friends at Law Enforcement Today and to damage Conflict's reputation.  Doc. 2 ¶ 208.  But Plaintiffs fail to elaborate on how the filing of a false statement in a case to which neither Plaintiffs nor Defendants are parties constitutes abuse of process.

Defendants' motion to dismiss the abuse of process claim is granted.

### D.  Tortious Interference with Contract

Count Four of the complaint alleges tortious interference with contract against Komorek and API International.  Plaintiffs assert that Komorek attempted to induce Conflict customers—including Jacobson—to repudiate their business relationships with Conflict and retain Komorek instead.  Doc. 2 ¶¶ 301–02; *see also id.* ¶¶ 108–10.

To state a claim for tortious interference with contract, a plaintiff must allege "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procurement of the

third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Regeneron Pharms., Inc. v. Novartis Pharma AG*, --- F.4th ---, No. 22 Civ. 0427, 2024 WL 1145340, at *11 (2d Cir. Mar. 18, 2024) (internal quotation marks and citation omitted). The plaintiff must also allege that "the contract would not have been breached but for the defendant's conduct." *Id.* (quoting *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126–27 (2d Cir. 2019)).

The dispute here focuses on the fourth element:  an actual breach of the contract. In New York, a contract that is terminable at will "cannot be the basis for a tortious interference with contract claim because there can be no breach of contract, a necessary element for tortious interference with contract, when the contract may be terminated at will." *Tatintsian v. Vorotyntsev*, No. 16 Civ. 7203 (GHW), 2019 WL 1746004, at *3 (S.D.N.Y. Apr. 18, 2019) (internal quotation marks and citation omitted).  In this case, Defendants argue, the tortious interference with contract claim is based on Conflict's relationship with Jacobson—who was not required to use Conflict's services and was free to terminate the relationship at will.  Doc. 28 at 12.

Plaintiffs respond that the alleged tortious interference concerns past services rendered and amounts owed.  Doc. 31 at 15–16.  In particular, the complaint asserts that Komorek encouraged Jacobson not to pay fees she owed Conflict pursuant to her contract.  Doc. 2 ¶ 76.  According to Plaintiffs, Jacobson had continuing obligations to pay those fees, and Komorek interfered with those obligations.  Doc. 31 at 16.

Plaintiffs have not adequately alleged tortious interference with contract.  As other courts have explained, "it is insufficient, for purposes of stating a viable claim for tortious interference with contract, to allege in conclusory terms that a contract existed and was breached." *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, No. 12 Civ. 4828 (KPF), 2018 WL 1273343, at *11 (S.D.N.Y. Mar. 5, 2018) (collecting cases); *see also, e.g.*, *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 104 (2d Cir. 2012) ("Without providing additional factual allegations regarding, *inter*

*alia*, the formation of the contract, the date it took place, and the contract's major terms, the proposed amended complaint similarly fails to sufficiently plead the existence of a contract.").  Instead, the plaintiff must "plead the terms of the alleged underlying contract . . . and any specific breach thereof."  *Bennett v. State Farm Fire & Cas. Co.*, 26 N.Y.S.3d 554, 555 (App. Div. 2016); *see also, e.g.*, *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 211 (W.D.N.Y. 2021) ("It is not enough to describe the contract in general terms . . . .").

The complaint falls short of that standard.  Plaintiffs allege that Jacobson retained Conflict to conduct surveillance in March 2021 and that she has paid the company "most, but not all," of the fees due under the agreement.  Doc. 2 ¶ 68–69.  The complaint also asserts that "Jacobson still owes monies payable to Conflict for services rendered and is in breach of her agreement with Conflict."  *Id.* ¶ 75.  But the complaint fails to provide any factual allegations concerning the specific terms of the agreement that Komorek caused Jacobson to breach.  *See, e.g.*, *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 791 (S.D.N.Y. 2019) (dismissing tortious interference claim where plaintiff failed to plead "the terms of the contract that Defendants caused a third party to breach"); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 208 (S.D.N.Y. 2008) (dismissing tortious interference claim because the complaint provided "no facts to allege what kind of contract [the parties had], whether it was nonexclusive, and whether it was valid").  Nor does the complaint offer any details about the contracts between Conflict and other customers that Komorek allegedly interfered with.

Accordingly, the complaint fails to state a claim for tortious interference of contract.  Defendants' motion to dismiss that claim is granted.

### E.  Tortious Interference with Prospective Economic Advantage

Plaintiffs' claim for tortious interference with prospective economic advantage fares no better.  The complaint alleges that Komorek sent an email to "Client #1"—who had a longstanding business relationship with Conflict—that linked to a story accusing

Conflict of "bilking a client through bogus billing."  Doc. 2 ¶¶ 309, 311.  Komorek emailed the same story to several WAD members—"Clients 2 through 11"—who also had business relationships with Conflict.  *Id.* ¶¶ 323, 325.  In doing so, Plaintiffs allege, Komorek sought to interfere with Conflict's business relations.  *Id.* ¶¶ 312, 326.

To state a claim for tortious interference with prospective economic advantage, "a plaintiff must show that '(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship.'"  *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (quoting *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).[9]

Defendants argue that the complaint fails to satisfy these requirements.  Doc. 28 at 13.  In their view, the complaint alleges nothing more than "a fight for business and referral sources in a competitive market for private investigations services."  *Id.*; *see, e.g.*, Doc. 2 ¶ 108 (alleging that Komorek "began soliciting several of Conflict's clients and indicated to the clients that Conflict was no longer capable of servicing these clients without Komorek").  Defendants assert that this "pursuit of economic benefit" does not give rise to a claim for tortious interference with prospective economic advantage.  Doc. 28 at 13.

In response, Plaintiffs highlight the complaint's allegations that Komorek sent emails to Conflict's clients and associates falsely accusing the company of fraudulent billing practices and criminal activity.  Doc. 31 at 17–18; *see, e.g.*, Doc. 2 ¶¶ 228, 311.

---

[9] The complaint describes this as a claim for tortious interference with prospective business advantage, Doc. 2 at 39–40, while the parties' briefs describe it as tortious interference with prospective economic advantage, Doc. 28 at 12; Doc. 31 at 17.  "Courts refer to this cause of action by a number of different names, including prospective economic advantage, beneficial business relations, prospective business advantage, and business or economic relations."  *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 465 n.23 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).  But regardless of the term used, "the same legal standards apply."  *Id.*

They argue that those communications are actionable on their own and thus satisfy Plaintiffs' burden to show "more culpable conduct."  Doc. 31 at 18.

These allegations are not sufficient.  As other courts applying New York law have recognized, "[p]leading the presence of false statements alone is not enough to support a claim for tortious interference."  *Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 170 (S.D.N.Y. 2008); *see also Boehner v. Heise*, 734 F. Supp. 2d 389, 406 (S.D.N.Y. 2010) ("[N]o reasonable juror could conclude that Plaintiffs satisfy the elements of tortious interference with prospective economic relations merely by showing that Defendants said bad things about them.").  Instead, "the false statements must constitute an independent crime or tort, be made solely out of malice, or amount to 'extreme and unfair' economic pressure."  *Friedman*, 551 F. Supp. 2d at 170.  The closest Plaintiffs come to satisfying this standard is alleging that the emails Komorek sent were "defamatory."  Doc. 2 ¶¶ 311, 325; *see also* Doc. 31 at 17 (asserting that Komorek sent "false and defamatory emails").  But conclusory allegations that a statement was defamatory are not enough to state a claim for tortious interference with prospective economic advantage.  *See Williams v. Citigroup, Inc.*, No. 08 Civ. 9208 (LAP), 2009 WL 3682536, at *10 (S.D.N.Y. Nov. 2, 2009) (dismissing tortious interference claim where plaintiff's allegation of defamation was "a bald legal conclusion, unsupported by any further allegations"), *vacated in part on other grounds*, 659 F.3d 208 (2d Cir. 2011).

Plaintiffs also attempt to satisfy the "wrongful purpose" or "improper means" requirement by pointing to various allegations of Komorek's wrongdoing in the complaint.  Doc. 31 at 18.  The complaint alleges, for example, that Komorek resigned without notice; deleted company data from his Conflict-issued devices; damaged office property; and attempted to poach employees.  *Id.*; *see, e.g.*, Doc. 2 ¶¶ 92–117.  None of these allegations state a claim for tortious interference with economic advantage, however, because they involve conduct directed at Plaintiffs.  The case law is clear that conduct may constitute tortious interference only if it is "directed at the third parties with

whom plaintiff sought to have the relationship." *Bradbury v. Israel*, 168 N.Y.S.3d 16, 19 (App. Div. 2022); *see also, e.g.*, *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1104 (N.Y. 2004) ("As federal courts applying New York law have recognized, conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship."). The allegations cited by Plaintiffs are unavailing because they do not show that any of Komorek's acts were directed at Conflict's clients.

Defendants' motion to dismiss the tortious interference with prospective economic advantage claim is granted.[10]

### F.   Unfair Competition

Count Seven of the complaint alleges unfair competition against Komorek and API International. Doc. 2 ¶¶ 334–43. Plaintiffs assert that Komorek has used Conflict's confidential business information and proprietary materials to compete against Conflict. *Id.* ¶¶ 335–36.

"Common law unfair competition is 'a broad and flexible doctrine . . . [that] is adaptable and capacious.'" *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 446 (E.D.N.Y. 2011) (alteration and omission in original) (quoting *Roy Export Co. Establishment v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982)). A claim for unfair competition "must be grounded in either deception or appropriation of the exclusive property of the plaintiff." *Id.* (quoting *H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1025 (2d Cir. 1989)). To state a claim, the plaintiff "must allege special damages by identifying actual losses and their causal relationship to the alleged tortious act." *Fullsend, Inc. v. Cannafellas, Inc.*, No. 22 Civ. 2515 (ENV) (ARL), 2023

---

[10] Defendants raise another argument in support of their motion to dismiss this claim, asserting that the complaint is deficient because it fails to identify specific clients with whom Komorek interfered. Doc. 28 at 13. Plaintiffs request leave to amend the claim if it is dismissed—but only to add the names of the anonymous clients referenced in the complaint. Doc. 31 at 18–19. Because the Court dismisses the claim on the other grounds advanced by Defendants, an amendment merely to add the clients' names would be futile.

WL 2970458, at *5 (E.D.N.Y. Jan. 31, 2023); *see also, e.g.*, *Waste Distillation Tech., Inc.*
*v. Blasland & Bouck Eng'rs, P.C.*, 523 N.Y.S.2d 875, 877 (App. Div. 1988) ("[T]he
absence of sufficient allegation of special damages mandates the dismissal of the
plaintiff's unfair competition and *prima facie* tort causes of action.").  "In this context,
special damages refers to direct financial loss, lost dealings, or an accounting of the
profits caused by the anticompetitive acts at issue." *CA, Inc. v. Simple.com, Inc.*, 621 F.
Supp. 2d 45, 54 (E.D.N.Y. 2009) (internal quotation marks and citation omitted).

Defendants challenge the unfair competition claim solely on the basis that the
complaint fails to allege special damages.  Doc. 28 at 14.  In particular, they assert that
"there is no specific identification of pecuniary losses or an assessment of how such a
figure was calculated." *Id.*

Plaintiffs do not dispute that special damages must be alleged.  Doc. 31 at 19.
Instead, they contend that the complaint is sufficient because it alleges that Komorek
destroyed the contractual relationships between Conflict and several of its clients, thereby
"causing monetary loss." *Id.* (citing Doc. 2 ¶¶ 302, 304, 324, 328, 330).  Plaintiffs also
cite allegations in the complaint suggesting that Komorek received some of the fees
Jacobson owed to Conflict. *Id.* at 20 (citing Doc. 2 ¶¶ 71–76).  And they rely on
allegations that Komorek made erroneous accounting entries and deleted company
records before his resignation, which resulted in additional monetary losses for Plaintiffs.
*Id.* (citing Doc. 2 ¶¶ 51, 100–02, 106).  According to Plaintiffs, these allegations of
"special damages in the form of pecuniary losses" suffice to state a claim for unfair
competition. *Id.*; *see also id.* at 19 ("Although Plaintiffs do not yet know the total dollar
value, they have clearly alleged an economic loss that qualifies as special damages.").

The complaint has adequately alleged special damages.  Plaintiffs allege that
Komorek retained confidential information when he left Conflict—and that he used that
information to successfully solicit Conflict clients.  Doc. 2 ¶¶ 103–04, 108–12; *see also*
*id.* ¶¶ 335–37.  With all reasonable inferences drawn in Plaintiffs' favor, therefore, the

complaint plausibly alleges that Defendants diverted business from Plaintiffs.  *See Barbagallo*, 820 F. Supp. 2d at 447 (concluding that special damages were adequately pled where counterclaim alleged that plaintiff continued professional relationships with sixty-seven clients after leaving employment with defendant); *Out of Box Promotions, LLC v. Koschitzki*, 866 N.Y.S.2d 677, 681 (App. Div. 2008) (finding that complaint stated claim for unfair competition where it alleged that defendant had diverted business from plaintiff and appropriated plaintiff's customers).  That diversion of business is sufficient, at this stage, to allege special damages.  *See Barbagallo*, 820 F. Supp. 2d at 447 ("Simply alleging that defendant diverted plaintiff's customers and business is sufficient to show special damages."); *see also CA, Inc.*, 621 F. Supp. 2d at 54 (explaining that "a loss of business . . . satisfies the requirement for special damages").

Defendants argue that the complaint does not allege special damages with sufficient specificity, but their cited authority is not persuasive.  Doc. 34 at 13–14.  Those cases addressed the pleading requirements for special damages in the context of claims for disparagement of goods.  *See Globe Cotyarn Pvt. Ltd. v. Next Creations Holdings LLC*, No. 18 Civ. 04208 (ER), 2019 WL 498303, at *7 (S.D.N.Y. Feb. 8, 2019) (noting that where plaintiff seeks to recover for loss of customers from disparagement of goods, "the individuals who ceased to be customers, or who refused to purchase, must be named and the exact damages itemized" (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002))); *Formulated Solutions, LLC v. CKD, Inc.*, No. 02 Civ. 6490 (DLI) (RLM), 2005 WL 2413506, at *6 (E.D.N.Y. Sept. 29, 2005) (holding that "approximated damages are insufficient to make out a cause of action in *disparagement*" (emphasis added)).  The unfair competition claim alleged here— predicated on Komorek's use of confidential information to solicit Conflict clients—is more analogous to cases in which courts have found that pleading diversion of business is sufficient.  *See Barbagallo*, 820 F. Supp. 2d at 447 (unfair competition claim involved allegations that third-party defendant misused confidential information to solicit clients);

*Out of Box*, 866 N.Y.S.2d at 578 (unfair competition claim was predicated on "alleged bad faith misappropriation of a commercial advantage belonging to another by exploitation of proprietary information or trade secrets" (internal quotation marks and citation omitted)).

Defendants' motion to dismiss the unfair competition claim is denied.

### G. Breach of Fiduciary Duty

Plaintiffs also bring a claim against Komorek for breach of fiduciary duty.  Doc. 2 ¶¶ 277–91.  The complaint alleges that Komorek had a fiduciary relationship with Conflict and owed duties of honesty, care, and loyalty.  *Id.* ¶¶ 280–81.  And it alleges that Komorek breached those duties in several ways, including:

> (i) making false representations about his qualifications; (ii) failing to disclose to Conflict the litigation filed against Komorek for wire-tapping[;] (iii) misappropriating funds and assets of the corporation; (iv) engaging in self-dealing; (v) misappropriating confidential and proprietary information of Conflict; (vi) encouraging and continuing to encourage Conflict's clients to seek services from him and/or his competing entity; (vii) encouraging and continuing to encourage Conflict's employees to seek employment with him and/or his competing entity; [and] (viii) contacting and continuing to contact Conflict's current clients to steer those clients away from Conflict and to Komorek and/or API [International] for services from his competing entity.

*Id.* ¶ 285.

"To state a claim for breach of fiduciary duty under New York law, 'a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct.'"  *Advanced Oxygen Therapy Inc. v. Orthoserve Inc.*, 572 F. Supp. 3d 26, 36 (S.D.N.Y. 2021) (citation omitted).  A fiduciary relationship "exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  *Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356, 372 (S.D.N.Y. 2011) (quoting *EBC I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005)).

Defendants attack the breach of fiduciary duty claim on multiple grounds.  They argue that (1) Komorek was not a fiduciary of Conflict UK before he was hired; (2) Komorek's failure to disclose the lawsuit against him is not the kind of conduct that gives rise to a claim for breach of fiduciary duty; (3) Komorek's post-employment competition with Conflict for customers does not constitute a breach of fiduciary duty; and (4) Plaintiffs' allegations that Komorek breached a fiduciary duty by misappropriating assets are duplicative of the unfair competition claim.  Doc. 28 at 14–19.

In their response, Plaintiffs fail to articulate any basis for finding that a fiduciary relationship existed between Komorek and Conflict before his employment began.  Nor do Plaintiffs answer Defendants' assertions that Komorek's failure to disclose the lawsuit and his post-employment solicitation of Conflict customers are insufficient to show a breach of fiduciary duty.  Plaintiffs also do not respond to Defendants' argument that the allegations concerning misappropriation of assets are duplicative of the unfair competition claim, and the Court fails to see how the allegations are distinct.  *Cf. Delville v. Firmenich Inc.*, 920 F. Supp. 2d 446, 471 (S.D.N.Y. 2013) (dismissing breach of fiduciary duty counterclaim as duplicative to the extent it was based on alleged misappropriation).  Courts have recognized that "[a] plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument."  *Cheng v. T-Mobile USA, Inc.*, No. 22 Civ. 3996 (PKC), 2023 WL 6385989, at *6 (S.D.N.Y. Sept. 29, 2023) (citation omitted).  Accordingly, the breach of fiduciary duty claim is dismissed insofar as it relies on pre-employment allegations, Komorek's failure to disclose the lawsuit, post-employment solicitation of Conflict clients, and misappropriation of assets.

Plaintiffs focus more narrowly on the complaint's allegations that Komorek breached a fiduciary duty while employed by Conflict.  Doc. 31 at 20 (discussing Komorek's actions "while employed and receiving a salary from Plaintiffs" (emphasis

omitted)).  Specifically, they assert that Komorek made ongoing misrepresentations about his background throughout his time at Conflict.  *Id.* at 22.[11]

The complaint sufficiently alleges a breach of fiduciary duty based on Komorek's conduct while employed by Conflict.  The allegations suggest that Komorek falsely represented his employment history, overstated his intelligence-gathering capabilities, and misrepresented his qualifications.  Doc. 2 ¶¶ 120–36.  That kind of conduct could plausibly amount to a breach of fiduciary duty.  *See In re Parmalat Sec. Litig.*, 684 F. Supp. 2d 453, 478 (S.D.N.Y. 2010) ("Perfect candor, full disclosure, good faith, in fact, the utmost good faith, and the strictest honesty are required of promoters [and other fiduciaries], and their dealings must be open and fair, or without undue advantage taken." (alteration in original) (citation omitted)); *cf. Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 738–39 (2d Cir. 1984) ("[T]his Court has expressly held that, under New York law, a duty to disclose material facts is triggered:  first, where the parties enjoy a fiduciary relationship . . . and second, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." (omission in original) (internal quotation marks and citation omitted)).

Defendants' only argument in response is that Conflict had no need to rely on Komorek's qualifications because it could evaluate his performance in real time.  Doc. 34 at 15.  But the complaint alleges that Conflict would not have hired Komorek had it known the truth about his past history.  Doc. 2 ¶ 144.  At this point, drawing all reasonable inferences in Plaintiffs' favor, the Court can plausibly infer that Conflict also

---

[11] Plaintiffs also argue that Komorek "formed a competing venture, engaged in self-dealing with a known client, and then exploited a business opportunity of a current client using confidential information."  Doc. 31 at 20–21.  As discussed above, however, Plaintiffs fail to explain how these allegations are distinct from the unfair competition claim.

would not have *continued* to retain Komorek had it known the truth about his experience and qualifications.[12]

Defendants' motion to dismiss the breach of fiduciary duty claim is granted in part and denied in part. The motion is denied to the extent that the claim is premised on Komorek's misrepresentations while he was employed at Conflict. In all other respects, the motion is granted.

### H.  Unjust Enrichment

Finally, Plaintiffs bring an unjust enrichment claim against Komorek. Doc. 2 ¶¶ 292–97. The complaint alleges that Komorek accessed Conflict's confidential files during his employment and that he has retained that information for his personal benefit. *Id.* ¶¶ 293–94.

"Under New York law, for a plaintiff to prevail on a claim of unjust enrichment, the plaintiff must establish '(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff.'" *Advanced Oxygen*, 572 F. Supp. 3d at 35 (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001)).

Defendants contend that the unjust enrichment claim should be dismissed because it is duplicative of the claims for breach of contract, breach of fiduciary duty, and unfair competition. Doc. 28 at 19. Plaintiffs apparently concede this point, as they state: "Admittedly, Plaintiffs' claims against Komorek sound in breach of contract[], breach [of] fiduciary duties, and other tortious acts based on his wrongful conduct." Doc. 31 at 23. As a result, the unjust enrichment claim against Komorek is dismissed.

---

[12] In response to Plaintiffs' narrower claim, Defendants do not specifically challenge the existence of a fiduciary relationship between Conflict and Komorek. Doc. 34 at 15. Regardless, that "fact-specific" inquiry, *EBC I, Inc.*, 832 N.E.2d at 31, cannot be resolved here given the complaint's allegations that Komorek was hired as an officer of Conflict and later served as its vice president, Doc. 2 ¶¶ 25–26, 282.

Plaintiffs argue only that they have a potential unjust enrichment claim against API International.  *Id.*  In particular, they assert that API International does not have a contract with Plaintiffs but may have benefited from Komorek's wrongful actions.  *Id.*  Plaintiffs therefore request leave to amend their complaint to allege an unjust enrichment claim against API International.  *Id.*

Rule 15 provides that leave to amend should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A district court may deny leave to amend, however, for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, Defendants do not assert that amendment would be prejudicial, futile, or in bad faith.  Instead, they argue that Plaintiffs have improperly sought leave to amend in their opposition brief.  Doc. 34 at 16–17.  But plaintiffs routinely request permission for leave to amend in the event that a motion to dismiss is granted.  *See, e.g.*, *Tavarez-Vargas v. Annie's Publ'g, LLC*, No. 21 Civ. 9862 (AT), 2023 WL 2499966, at *3 (S.D.N.Y. Mar. 14, 2023).  *See generally Van Buskirk v. The N.Y. Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003) ("[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint.").  Accordingly, the Court will grant Plaintiffs leave to amend the complaint to assert an unjust enrichment claim against API International.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART, as follows:

The motion to dismiss is GRANTED with respect to the claims for abuse of process, tortious interference with contract, tortious interference with prospective

economic advantage, and unjust enrichment (as to Komorek).  Plaintiffs may amend their complaint by no later than April 12, 2024, to assert an unjust enrichment claim against API International.  The dismissed claims are dismissed with prejudice because Plaintiffs have not requested leave to amend.  *See, e.g.*, *Cesiro v. Rite Aid of N.Y.*, No. 20 Civ. 10519 (ER), 2022 WL 392907, at *6 (S.D.N.Y. Feb. 9, 2022) ("[W]here a plaintiff has neither requested leave to amend, nor indicated additional facts that would be added to the complaint, a court is not required to grant leave to amend *sua sponte*.").

The motion to dismiss is DENIED with respect to the claims for breach of contract and unfair competition.

With respect to the breach of fiduciary duty claim, the motion to dismiss is DENIED to the extent that the claim is premised on Komorek's misrepresentations while he was employed at Conflict.  In all other respects, the motion to dismiss the breach of fiduciary duty claim is GRANTED.

The parties are directed to appear for a status conference on April 19, 2024, at 2:30 p.m. at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, Courtroom 619.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 27.

It is SO ORDERED.

Dated:   March 29, 2024
         New York, New York

_____
        EDGARDO RAMOS, U.S.D.J.